GULOTTA, Judge.
Plaintiff appeals from the dismissal of his claim for total and permanent disability benefits under the Workmen’s Compensation Act. In reasons for judgment the trial judge stated that plaintiff’s suit had prescribed. In this connection the trial judge concluded the injury had manifested itself immediately after the accident and rejected plaintiff’s contention that the injury developed within one year from the date suit was filed.
The trial judge rejected further plaintiff’s contention that payment for medical expenses made within one year from the date of filing suit interrupts prescription of a claim for weekly compensation payments. He went on to make the factual finding that plaintiff was not totally and permanently disabled within the meaning of the Workmen’s Compensation Act and that back pain caused from nerve root irritation resulting in a laminotomy performed on plaintiff within one year from date of filing suit was not causally connected with the back injury sustained by plaintiff. We agree.
A chronology is helpful. While employed as a pipe welder for defendant company on March 9, 1973, plaintiff sustained injury to his back. On March 12, 1973, medical examination revealed spasms of the paraver-tebral muscles of the back. Treatment was administered until July, 1973, when plaintiff was discharged to return to work. Examinations by an orthopedist in October, 1973 and in April, May and November, 1974, revealed no objective findings to support plaintiff’s subjective complaints of pain. Subsequent to the accident, plaintiff did not return to work for his employer but worked for varying periods of time for other employers. The last workmen’s compensation *930 payment was made to plaintiff on June 15, 1973, and cashed by him on June 18, 1973. Suit was filed on July 9, 1974. Thereafter, on July 19, 1974, plaintiff was seen by Dr. Byron Unkauf and in February, 1975, a laminotomy was performed on plaintiff’s back.
Because we conclude the record supports the trial court’s conclusion that plaintiff failed to show a causal connection between the accident and the subsequent back operation, we find no necessity to consider the prescription question.
On March 12, 1973, three days following the accident, plaintiff was seen by Dr. Matthew G. Huff, a general practitioner. The patient was seen by the doctor on numerous occasions from that time until July 16,1973, when he was discharged to return to work on the following day. Dr. Huff’s diagnosis of spasm and soreness to the paravertebral muscles and ligaments in the lower thoracic and lumbar areas did not change at any time during this period of treatment. X-rays during plaintiff’s hospitalization on April 26, 1973, did not reveal any findings pertinent to the accident. During this period of time, the patient received muscle relaxants and diathermy treatments. Dr. Huff testified that he could not find anything to indicate a problem more serious than muscle soreness as a result of the accident.
On May 18, 1973, plaintiff was examined by E. J. Dabezies, M.D., an orthopedic surgeon. The physical examination revealed full flexion and no spasm of the thoracic or lumbar musculature. Straight leg raising did not produce any back or leg pain and the patient’s reflexes in the lower extremities were unimpaired. X-ray examination of the lumbar spine did not disclose any problems. Dr. Dabezies concluded that plaintiff had sustained a low back sprain as a result of work-related activity. Because the examination revealed no objective evidence of disability, he concluded that plaintiff could return to his job, though it would be advisable that he wear a corset until his muscles were reconditioned to a full day’s labor.
On October 10, 1973, plaintiff was examined by Walter H. Brent, Jr., M.D., an orthopedic surgeon. The patient gave a history of having attempted work unsuccessfully for three weeks due to back pain after having been discharged by Dr. Huff. Dr. Brent’s examination at that time revealed mild limitation of motion, but no wasting of calf muscles. The patient was placed on medication and seen again on November 1, 1973, when the doctor found complete motion and felt that plaintiff could return to his former occupation. He was seen again in November, 1973, and in February, March, April, May and November, 1974. Dr. Brent testified there were no objective findings on any of these occasions and that he could not account for the patient’s continued complaints of pain. He found no evidence of nerve root impingement or irritation, and felt that the patient was feigning his condition.
Dr. Brent referred plaintiff to Dr. John Jackson, a neurosurgeon, for evaluation. Dr. Jackson’s examination on January 24, 1974, produced normal findings. The neurological examination revealed a full range of motion of the lumbar spine in all directions and no spasm. No muscular weakness or atrophy was found and the x-ray examination was normal. Dr. Jackson could find no evidence of neurological disease or a disc problem. He did not recommend a myelogram because he anticipated that the results would be normal.
Byron Unkauf, M.D., an orthopedic surgeon, examined plaintiff on June 28, 1974, and found left paraspinal muscular tightness, a limited range of movement, left sacroiliac area tenderness alad a slight wasting of the right calf muscle. X-rays of the lumbosacral spine were negative for fracture of disease. When seen again by this doctor on July 19, 1974, plaintiff had a reasonable range of movement and no spasm. Dr. Unkauf felt that plaintiff was fit to return to his original employment at that time. Examinations in November and December, 1974 and January, 1975, disclosed paravertebral and spinal muscular tightness with a restricted range of move *931 ment accompanied by pain. A lumbar mye-logram made prior to the patient’s admittance to the hospital on February 4, 1975, revealed blunting of the root sleeves at the L-4-5 level, meaning there was some resistance causing pressure on the nerve root, according to Dr. Unkauf. On February 7, 1975, a laminotomy was performed at the L-4-5 level. Though there was no protrusion of the disc, Dr. Unkauf found adhe-sions present, some bleeding and an enlarged vein pressing on the nerve root. He cleared the area and freed the spinal sac but did not perform a laminectomy. Dr. Unkauf was of the opinion that the enlarged vein was probably congenital, but that the work-related injury had injured the vein so that it bled and caused the adhesions resulting in the patient’s pain. He further testified that the calf wasting revealed in his physical examination indicated that the nerve root was being traumatized. According to Dr. Unkauf, though the patient has improved since the operation, he has a 15-20% permanent disability and cannot resume his work as a pipe welder. He does not feel that the patient has been feigning complaints.
It is well-settled in claims for workmen’s compensation and medical benefits that plaintiff employee bears the burden of proving, by a preponderance of the evidence, causation between the work-related accident and the disability. Causation between the accident and the disability is a factual question, however, and the findings of the trial judge will not be set aside unless manifestly erroneous. See Todero v. Great Atlantic and Pacific Tea Co., Inc., 343 So.2d 388 (La.App. 4th Cir. 1977) and the jurisprudence cited therein. The evidence in the instant case considered, we cannot conclude that the trial judge has committed manifest error. The findings and opinions of Drs. Huff, Dabezies, Brent and Jackson comprise a substantial factual basis upon which the trial judge could base his ruling, notwithstanding Dr. Unkauf’s testimony to the contrary.
In accordance with the stipulation[1] between the parties, having concluded that the record supports the trial judge’s denial of workmen’s compensation and medical benefits claimed by plaintiff, we need not address ourselves to the issue of prescription which was also raised on appeal.
Accordingly, the judgment is affirmed.

AFFIRMED.

. The parties entered into the following stipulation:
“It is stipulated between the parties to this appeal that the issues before the Court are:
(1) Is the judgment of the trial court with respect to the denial of workmen’s compensation benefits and medical benefits precluding the question of prescription supported by the evidence contained in the record?
(2) Alternatively, if the judgment of the trial court with respect to the denial of the workmen’s compensation benefits and medical benefits is not supported by the medical evidence contained in the record, is the plaintiff-appellant’s claim for these items then prescribed?”